# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARY JAYNE BRUMLEY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:21-cv-01698-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION TO COMMISSIONER FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 11, 12, 13) |

## I.

## INTRODUCTION

Plaintiff Hilary Jayne Brumley ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be granted and the action shall be remanded to the Commissioner for further proceedings.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 6, 7, 8.)

## II.

## BACKGROUND[2]

As relevant to the longitudinal record and considerations under the rebuttable presumption of continuing nondisability, the Court notes Plaintiff filed a prior claim for disability benefits which was denied.  Plaintiff originally filed a claim for Social Security benefits under Title II of the Social Security Act on February 21, 2013, alleging disability beginning May 1, 2009.  (See Admin. Rec. ("AR") 77, ECF No. 9-1.)  That claim was initially denied on August 12, 2013, and upon reconsideration on February 7, 2014.  (Id.)  Plaintiff appeared in person at a hearing held May 20, 2015, in Sacramento, California before Administrative Law Judge ("ALJ") David G. Buell.  (AR 77–88.)  The ALJ determined Plaintiff had the following severe impairments: mood disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), bilateral knee degenerative joint disease with residuals of left knee surgery, fibromyalgia, and hidradenitis suppurativa.  (AR 79.)  The ALJ found Plaintiff's mental impairments resulted in only mild and moderate functional limitations—largely because Plaintiff's activities included preparing meals, shopping in stores, performing household chores, reading, navigating the internet, watching television, and assisting her teenage son with homework; her mental status examinations demonstrated she could maintain her grooming and hygiene, was cooperative with good eye contact, was fully oriented, able to recite numbers backwards, spell words forwards and backwards, recall words after a brief delay, and perform simple calculations; she reported difficulties with authority figures and her ex-husband, but was able to maintain relationships with family members; and the medical record indicated Plaintiff had no episodes of decomposition, had not been hospitalized, and did not require emergency care during the alleged period of disability.  (AR 80–81.)  To account for these mild and moderate limitations, the ALJ reached an RFC determination that permitted only sedentary work, with multiple limitations related to stooping, kneeling, crouching, crawling and climbing, as well as wearing heavy protective gear that might irritate Plaintiff's skin; Plaintiff was limited to simple, routine, and repetitive work;

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

could not exercise significant independent judgment in response to more substantial changes in the work environment; and she was precluded from interacting with the general public.  (AR 81–82.)  The ALJ denied Plaintiff's February 21, 2013 claim on June 8, 2015, finding Plaintiff was not disabled from May 1, 2009 (the alleged onset date), through March 31, 2013 (the date last insured).  (AR 87–88.)

On April 27, 2019, Plaintiff filed the instant application for Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning May 1, 2009.[3]  (AR 198–204.)  Plaintiff's claim was initially denied on July 10, 2019, and denied upon reconsideration on November 13, 2019.  (AR 57–73, 100–04.)  On December 2, 2020, Plaintiff, represented by counsel,[4] appeared via telephonic conference for an administrative hearing before ALJ David R. Mazzi.  (AR 27–40.)  Vocational expert ("VE") Jacklyn Benson-Dehaan was also present at the hearing.  On August 11, 2021, the ALJ issued a decision denying benefits.  (AR 7–26.)  On October 29, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

Plaintiff initiated this action in federal court on November 29, 2021, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on March 3, 2022.  (ECF No. 9.)  On March 15, 2022, Plaintiff filed an opening brief.  (ECF No. 11.)  On April 29, 2022, Defendant filed an opposition to Plaintiff's brief.  (ECF No. 12.)  On May 9, 2022, Plaintiff filed a reply.  (ECF No. 13.)  The matter is deemed submitted.

///

///

///

---

[3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12 months preceding the month in which an application is filed) must be considered for purposes of her application, 20 C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff was under a disability as of the date the application was filed.

[4] Plaintiff was represented by attorney Jeffrey Milam, of Milam Law, Inc., during the administrative proceedings. (See AR 143–47.)  Plaintiff is currently represented by attorney Francesco P. Benavides, of the Law Officers of Francesco Benavides, in the instant matter.  (See ECF No. 11.)

**III.**

**LEGAL STANDARD**

**A.      The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1

**B.      Standard of Review**

2       Congress has provided that an individual may obtain judicial review of any final decision

3 of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4 determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5 the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6 Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7 the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9 evidence which, considering the record as a whole, a reasonable person might accept as adequate

10 to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11 (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12 Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13 the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14 not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

15 scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

16 CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17 citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18 ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20 falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

21 409 (2009).

22       Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23 simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25 Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

26 review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27 Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28 this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

As an initial matter, the ALJ noted Plaintiff's June 2015 final administrative decision and finding of nondisabilty, and considered whether there was any new and material evidence relating to the prior findings, or change in the law, regulations or rulings affecting the findings or the method for arriving at the findings so as to rebut the presumption of continuing nondisability. (AR 10–11 (citing Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97-4(9)[8].)  The ALJ determined there was a showing of changed circumstances and the presumption of continuing nondisability was rebutted, based on the change in the regulations and new mental disorders Listings, which were revised effective January 17, 2017.  (AR 11.)

Next, the ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, August 10, 2020 (AR 13–20):

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since April 27, 2019, the application date.  (AR 13 (citing 20 C.F.R. §§ 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: mood disorder, anxiety disorder, ADHD, bilateral knee degenerative joint disease with residuals of left knee surgery, fibromyalgia, and hidradenitis suppurativa.  (Id. (citing 20 C.F.R. § 416.920(c).)

The ALJ also noted Plaintiff was treated for low back pain, type 2 diabetes, pain in right shoulder, interstitial cystitis, hearing loss, and vertigo, and has a history of methamphetamine use and medical marijuana use, but that these conditions are being managed medically and were

---

[8] The SSA's Acquiescence Ruling 97-4(9) applies to disability cases involving claimants who reside in the Ninth Circuit, and states, "When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing non-disability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption.  A claimant may rebut the presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the (subsequent) unadjudicated period, e.g., a change in the claimant's age category under 20 CFR 426.963, an increase in the severity of the claimant's impairments, the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability."

deemed non-severe.  (Id.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 13–15 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).)

In reaching this decision, the ALJ considered Plaintiff's severe physical impairments under the listings, including Listing 1.18 (abnormality of a major joint in any extremity), 1.15 (disorders of the skeletal spine resulting in a compromise of a nerve root), and 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina).  (AR 13–14.)  However, the ALJ found no evidence of the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of these listings.

The ALJ also considered Plaintiff's mental impairments, and determined they did not meet or medically equal the criteria of Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), or any other section.  (AR 14.)  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because her limitations in the four broad functional areas are all of mild or moderate severity.  (AR 14–15.)  The ALJ also considered the paragraph C criteria and determined  the medical evidence does not demonstrate medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that diminishes the symptoms and signs of Plaintiff's mental disorder, with Plaintiff only achieving marginal adjustment.  (AR 15.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform "**sedentary work, as defined in 20 CFR 416.967(a), and that she is able to perform simple routines tasks equating to unskilled work without public interaction**."  (Id. (citing 20 C.F.R. § 416.929, and SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 18–19 (citing 20 C.F.R. § 416.965).)

At step five, the ALJ noted Plaintiff was born on September 5, 1972, and was 46 years old

(which is defined as a younger individual age 45–49) on the date the application was filed; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. (AR 19 (citing 20 C.F.R. §§ 416.963, 416.964; SSR 82-41, <u>available at</u> 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 19 (citing (20 C.F.R. §§ 416.969, 416.969(a)).)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, since April 27, 2019, the date the application was filed. (AR 20 (citing 20 C.F.R. § 416.920(g)).)

## V.

## DISCUSSION

On appeal, Plaintiff asserts six challenges to the ALJ's decision: (1) the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of physical and mental symptoms; (2) the ALJ failed to provide specific and legitimate reasons for discounting the medical source opinions of Plaintiff's treating medical providers, Michael Powell, PA-C, Todd Bouchier, M.D., and Joanne Spalding, M.D.; (3) the ALJ failed to provide specific and legitimate reasons for discounting the examining medical source opinion of the consultative psychologist, Charles Odipo, Ed.D.; (4) the ALJ failed to explain his departure from the non-examining opinion of the State agency mental health consultants, Barney Greenspan, Ph.D., and V. Meenakshi, M.D.; (5) the ALJ failed to provide germane reasons for discounting the lay witness statements of Plaintiff's friend, Michelle Simmons; and (6) the ALJ erred in relying exclusively on the Medical-Vocational Guidelines in evaluating whether Plaintiff could perform work at step five of the sequential evaluation. (ECF No. 11 at 11–12.) The Court shall first address Plaintiff's arguments concerning the ALJ's evaluation of the medical opinion evidence.

///

///

**A.  Evaluation of the Medical Opinion Evidence**

1.  Legal Standard

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

1   opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1).

2   Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

3   from other medical sources and nonmedical sources in the claim, the more persuasive the medical

4   opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

5           Accordingly, the ALJ must explain in his decision how persuasive he finds a medical

6   opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

7   404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [he] considered the [other

8   remaining factors]," except when deciding among differing yet equally persuasive opinions or

9   findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to

10  articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

11  Nonetheless, even under the new regulatory framework, the Court still must determine whether

12  the ALJ adequately explained how he considered the supportability and consistency factors

13  relative to medical opinions and whether the reasons were free from legal error and supported by

14  substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3

15  (C.D. Cal. May 14, 2021).

16          2.      Analysis

17          In her opening brief, Plaintiff applies the now-abrogated "specific, clear and convincing

18  reasons" standard in support of her argument that the ALJ improperly evaluated the medical

19  opinion evidence.  (See, generally, ECF No. 11 at 12–26.)  In her reply briefing, however,

20  Plaintiff acknowledges the new regulatory framework, as upheld in Woods v. Kijakazi, and

21  maintains that, even under the new regulations, the ALJ erred in his evaluation of the medical

22  evidence because he failed to adequately explain how he considered the supportability and

23  consistency factors relative to the medical opinions.  (See ECF No. 13 at 5–7.)  The Court agrees.

24          With respect to the medical opinions of Drs. Bouchier, Spalding, and Powell, for example,

25  the ALJ provides only the following evaluation:

26              I find the opinions of Todd Bouchier, M.D. (Exhibits B7F; B11F),
                Joanne Spalding, M.D. (Exhibit B17F), and Michael Powell, PA-C
27              (Exhibit B10F) to be unpersuasive.  In October 2015, Dr. Bouchier
                opined that the claimant can sit for zero to 2 hours in an 8-hour
28              workday and can stand and/or walk for zero to 2 hours in an 8-hour

workday (Exhibit B11F).  In June 2019, Dr. Bouchier opined that the claimant is limited to far less than sedentary work, including standing and/or walking for only 15 minutes in an 8-hour workday and sitting for only 45 minutes in an 8- hour workday (Exhibit B7F).  In November 2020, Dr. Spalding opined that the claimant can sit for 10 to 15 minutes at a time for a total of 5 hours over an 8-hour day and can stand and/or walk for 10 to 15 minutes at a time for 2 to 3 hours over an 8-hour day (Exhibit B17F).  Dr. Spalding further opined that the claimant must lie down for half an hour to an hour.  In September 2015, Mr. Powell opined that the claimant can sit for zero to 2 hours in an 8-hour workday, can stand/walk for zero to 2 hours in an 8-hour workday, and is unable to use muscles on a repetitive basis (Exhibit B10F).  **However, these opinions are inconsistent with and not supported by the record, which does not demonstrate findings that would warrant such restrictive limitations**.

(AR 17–18 (emphasis added).)  As correctly noted by Plaintiff, the ALJ's determination that Drs. Bouchier, Spalding, and Powell's opinions are "inconsistent with and not supported by the record" is conclusory.  Indeed, the entirety of the ALJ's discussion pertaining to these medical opinions consists of a summary of their opinions regarding Plaintiff's limitations, and the conclusory statement that such limitations are inconsistent with and unsupported by the record and are therefore too restrictive.

Further, while the ALJ discusses some medical records with respect to Plaintiff's symptom testimony at another point in his decision, this brief and incomplete summary of the record is insufficient to explain how the ALJ considered the supportability and consistency factors relative to the aforementioned medical opinions.  More specifically, the limitations opined by Dr. Powell were based on Plaintiff's complaints of severe pain and fatigue.  (AR 511–12.)  Dr. Bouchier based his opinion on Plaintiff's impairments of fibromyalgia, lumbar facet disease, hidradenitis, and severe lumbar degenerative disc disease, and the objective findings of muscle abscesses, muscle weakness, myofascial tender points, right leg weakness, decreased reflexes, and use of a walking cane/staff.  (AR 461, 513.)  Dr. Spalding based her opinion of Plaintiff's limitations on Plaintiff's primary impairments of fibromyalgia, chronic pain, hidradenitis, PTSD, degenerative disc disease of the spine, depression, and bipolar disorder.  (AR 711.)  Meanwhile, the ALJ identifies Plaintiff's severe impairments to include mood disorder, anxiety disorder, ADHD, bilateral knee degenerative joint disease with residuals of left knee surgery, fibromyalgia

and hidradenitis suppurativa (AR 13); however, the ALJ's discussion of the medical record, by contrast, does not address all of these impairments.  Rather, as to Plaintiff's physical impairments, the ALJ discusses only Plaintiff's alleged worsening knee pain as related to her prior surgery, and hidradenitis suppurativa, and suggests these particular impairments do not support the severity of Plaintiff's symptomology allegations.  (See AR 16–17.)  Further, confusingly, the ALJ appears to acknowledge the severity of Plaintiff's fibromyalgia, in that he acknowledges the prior ALJ's administrative decision indicating Plaintiff has had 16 of 18 specified myofascial tender points, notes Plaintiff's diagnosis of fibromyalgia is referred to throughout the record, and that Plaintiff has been receiving treatment for fibromyalgia.  (AR 17.)  In fact, the ALJ found the state agency medical consultants' opinions to be unpersuasive because they were not restrictive enough in light of the evidence of, among other things, Plaintiff's chronic pain due to fibromyalgia.  (AR 18.)

Because the ALJ appears to consider Plaintiff's fibromyalgia symptoms to be somewhat *supported* by the record, without any meaningful evaluation of the medical notes concerning Plaintiff's fibromyalgia symptoms, it is unclear to this Court how the ALJ deemed Drs. Bouchier, Spalding, and Powell's opinions—which were purportedly based on this and other impairments— to be inconsistent with and unsupported by the medical record.[9]  On this record, the Court must conclude the ALJ has not sufficiently explained his reasons for rejecting the medical opinions of Drs. Bouchier, Spalding, and Powell or supported his decision with substantial evidence.  See Woods, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain

---

[9] The Court may also note the lack of discussion and explanation, particularly as it pertains to Plaintiff's fibromyalgia, is especially problematic to the ALJ's decision, in light of the more recent line of Ninth Circuit cases expressly discussing fibromyalgia as an impairment and directing ALJs to carefully consider the "unique characteristics and diagnostic methods" of fibromyalgia and "consider a longitudinal record whenever possible" when issuing a disability decision in which the claimant has established a diagnosis of fibromyalgia.  See, e.g., Revels v. Berryhill, 874 F.3d 648, 656–57, 662 (9th Cir. 2017) (reversing ALJ decision rejecting medical opinions and symptom testimony as error arising from "an apparent fundamental misunderstanding of fibromyalgia" and failure to properly analyze claimant's fibromyalgia-related symptoms pursuant to SSR 12-2p); Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004) (finding ALJ erred by "effectively requiring 'objective' evidence for a disease that eludes such measurement" (internal brackets omitted)); David v. Kijakazi, No. 20-36035, 2021 WL 6101257, at *1 (9th Cir. Dec. 21, 2021) (ALJ erred in ignoring the longitudinal record of claimant with fibromyalgia symptoms).

1   how [it] considered the supportability and consistency factors" in reaching these findings, *id.* §

2   404.1520c(b)(2).");  see also  P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D.

3   Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to

4   specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still

5   'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the

6   medical opinions.") (citation omitted).

7          In arguing the ALJ sufficiently demonstrated Plaintiff's fibromyalgia symptoms did not

8   support the medical opinions, Defendant argues the ALJ noted the current record shows Plaintiff

9   has no trigger points.  (ECF No. 12 at 14.)  This appears to take the ALJ's statement out of

10   context.  While the ALJ did note he did not find records of trigger points, he immediately

11   countered this finding by acknowledging that the ALJ who issued the prior administrative

12   decision indicated Plaintiff had 16 of 18 specified myofascial tender points, that Plaintiff's

13   diagnosis of fibromyalgia is referred to throughout the record, and that she has been receiving

14   treatment for it.  (AR 17.)  Plaintiff has also pointed to medical notes documenting her treatment

15   for musculoskeletal pain, including pain management appointments, physical therapy notes

16   documenting Plaintiff's pain related to weightbearing and range of motion activities, MRIs

17   showing degenerative disc disease, and x-rays showing narrowing disc space (ECF No. 11 at 8–9

18   (citing AR 355, 357, 392, 413, 417, 419, 464, 480, 497, 504, 689, 710, 713, 717, 720–21, 723,

19   725–26, 730, 737)), which do not appear to be addressed by the ALJ in his decision beyond the

20   aforementioned comment that Plaintiff "has been receiving treatment for fibromyalgia."  Because

21   the ALJ does not elaborate on the nature or severity of Plaintiff's fibromyalgia in his decision or

22   explain how the record documenting this impairment relates to the doctors' opinions in terms of

23   the supportability and consistency factors, the Court is unable to ascertain his reasoning for

24   ultimately rejecting these doctors' opinions.

25          Defendant also argues Drs. Bouchier, Spalding, and Powell's opinions are unpersuasive

26   because they are presented in the form of a checklist, are based on Plaintiff's subjective

27   descriptions of pain, and did not include supportive objective evidence.  With respect to Dr.

28   Powell's opinion, Defendant additionally argues the opinion is stale.  (ECF No. 12 at 14–15); but

see also Pacheco v. Berryhill, 733 Fed. App'x 356, 360 (9th Cir. 2018) (holding evidence that predates a claimant's application date but postdates the alleged onset date is pertinent to the alleged period of disability); Revels, 874 F.3d at 662 (noting ALJs are directed to look at longitudinal records in determining cases involving fibromyalgia, due to its unique symptoms); Benecke, 379 F.3d at 594 (ALJ erred in rejecting claimant's consistent reports of fibromyalgia symptoms occurring before and after her diagnosis, even where much of the medical record substantially pre-dated her disability application).  The Court acknowledges Defendant presents colorable arguments that may, if supported with substantial evidence from the record, be sufficient to support the ALJ's rejection of the aforementioned medical opinions.  But such findings or reasoning—or evidence from the record—are not asserted or identified by the ALJ, and the Court cannot attribute Defendant's post hoc rationalizations to the ALJ's decision or otherwise "affirm the ALJ on a ground upon which he did not rely."  Revels, 874 F.3d at 654 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citations omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").); Le v. Comm'r of Soc. Sec., No. 2:19-cv-0751-DMC, 2021 WL 1212665, at *18 (E.D. Cal. Mar. 31, 2021) ("The Court recognizes that the ALJ *might* have meant to identify inconsistency between Ms. Le's testimony and the record in detailing medical evidence and Ms. Le's testimony … [b]ut that is not what the ALJ said.  He said that Ms. Le's testimony lacked support from the record … And for that reason, he erred.  The Court can only review and uphold the ALJ's decision on the basis of the reasons the ALJ provided." (emphasis in original)).

Because a different determination as to the persuasiveness of the limitations opined by Drs. Bouchier, Spalding, and Powell could impact the RFC determination and, therefore, the ultimate finding of disability, such error is not harmless.  See, e.g., Revels, 874 F.3d at 654 (ALJ decision is reversible when based on legal error or not supported by substantial evidence in the record); see also Stout, 454 F.3d at 1055–56 (collecting cases distinguishing between reversible error in social security cases and harmless error).  Accordingly, remand is warranted.

**B.     Plaintiff's Remaining Arguments**

Having found remand is warranted, the Court declines to address Plaintiff's remaining arguments for several reasons.  First, because the nature of Plaintiff's asserted claims may substantially change on remand, there is no need to discuss them as currently formulated. Second, because the case is already being remanded for further proceedings—which is the relief Plaintiff seeks—the court finds it unnecessary to address Plaintiff's remaining issues as they can adequately be addressed on remand and because any favorable rulings thereto will not secure for Plaintiff any relief beyond what has already been granted.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [the claimant's] alternative ground for remand."); Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) ("Because we reverse and remand as to the VA disability rating, we do not address Luther's other arguments."); see also Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**C.     Remand**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. Varney v. Sec'y of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir. 1988).

16

1    Here, an award of benefits by this Court is not appropriate, because there remain contested

2  issues regarding how supported and consistent with the record Drs. Bouchier, Spalding, and

3  Powell's opinions are, and the degree of persuasiveness to be accorded them.   Determination of

4  these issues could impact other aspects of the ALJ's decision, such as evaluation of the other

5  medical opinions, determination of the severity of all of Plaintiff's impairments and the

6  combination thereof, the determination of Plaintiff's RFC, and consequently the ultimate

7  determination of whether Plaintiff is able to perform work in the national economy.   Therefore,

8  the Court finds the matter should be remanded for the ALJ to re-evaluate the entirety of the

9  evidence and identify legally sufficient grounds to support his decision.

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF
      No. 11) be GRANTED;

2.    This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for
      further proceedings consistent with this decision; and

3.    The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff
      Hilary Jayne Brumley, and to CLOSE this case.

IT IS SO ORDERED.

Dated:   __**January 9, 2023**__                    _____
                                                    UNITED STATES MAGISTRATE JUDGE

17